IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DESHAWN STATEN,

                  Plaintiff,

v.

JAMIE ADAMS, JOLINDA WATERMAN,
SANDRA MCARDLE, BETH EDGE, SONYA
ANDERSON, ASHLEY DRONE, MIKE
KERMLING, REBECCA TRACY-FELDMAN,
TAMMY WEST, LUCAS STOWELL,
MARK KARTMAN, CAPTAIN DANE ESSER,
JAYNES DUSTIN, ERIC BEARCE, SERGEANT
SCOTT BROADBEND, JASON GODDFREY,
MATTHEW MUTIVA, SERGEANT ERICA
COLLINS, CAPTAIN DARYL FLANNERY,
SHAWN GALLENGER, MATTHEW PECKHAM,
JAKE SOLOMAN, REBECCA ENGLEBURGER,
STACY HOEM, RUBIN SCOTT ASH, MAXIM
PHYSICIAN RESOURCES, INJURIED PATIENTS
AND COMPENSATION FUND, LT. JANET FISCHER,
LEBBEUS BROWN, and HEATHER SCWENN,

                  Defendants.

OPINION AND ORDER

19-cv-512-wmc

---

*Pro se* plaintiff Deshaun Staten, who is currently incarcerated at Columbia Correctional Institution ("Columbia"), filed this lawsuit under 42 U.S.C. § 1983, against 30 defendants, all of whom were working at the Wisconsin Secure Program Facility ("WSPF") while he was incarcerated there. Staten claims that these defendants violated his constitutional and state law rights in handling his mental and physical health care needs, performing cell extractions and refusing him access to the court and prison grievance systems. Staten has filed a motion to amend his complaint and a proposed amended complaint (dkt. ##12, 13), which the court will grant. While Staten's amended complaint

is ready for screening as required by 28 U.S.C. § 1915A, the court is unable to conduct that screening because his amended complaint violates Federal Rule of Civil Procedure 20 because Staten's allegations in his complaint outline at least four separate lawsuits. Accordingly, Staten will be required to choose which lawsuit he would like to proceed on under this case number, and indicate whether he wishes to open other lawsuits to pursue his other claims. Finally, in this order, the court also will resolve Staten's motion for assistance in recruiting counsel (dkt. #15), three motions seeking various forms of injunctive relief (dkt. ##21, 23, 26), a motion seeking to preserve video footage (dkt. #14) and a motion for default judgment (dkt. #29).

OPINION

I.  **Rule 20**

Under Rule 20, plaintiffs may join their claims together in one lawsuit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). Yet, as the Court of the Appeals for the Seventh Circuit has stated, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). If a complaint includes unrelated claims against different defendants in violation of Rule 20, a court may order that the lawsuit be severed. *Lee v. Cook Cty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011); *In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439, 441 (7th Cir. 2004); *Aiello v. Kingston*, 947 F.2d 834, 835 (7th Cir. 1991). Even when the claims are related,

the court has authority under Rule 21 and its inherent authority to sever a lawsuit when it would be unwieldy to allow a plaintiff to bring multiple claims against many different defendants in a single case. *Lee*, 635 F.3d at 971 (court may sever claims under Rule 21 when differences between the claims predominate over common questions); *In re High Fructose Corn Syrup*, 361 F.3d at 441 (court has inherent authority to sever claims in interest of justice even when standard under Rule 21 is not satisfied).

Staten's complaint outlines at least four different lawsuits and names 30 defendants.

**Lawsuit #1**: Claims related to how HSU staff handled Staten's tube feedings and blood draws in 2018. Staten claims that HSU Manager Jolinda Waterman conducted blood draws improperly, failed to check Staten's blood sugar, changed his mental health code so he would receive less care, instructed staff to ignore his need for medications, and conducted tube feedings in a painful manner that made him bleed. Staten claims that nurses Anderson, Drone, McArdle, Edge and Kermling acted improperly on Waterman's behalf and that he was hospitalized five times because of Waterman, Drone and McArdle's failure to follow court orders requiring them to provide him adequate nutrition.

Related to his complaints about tube feeding, Staten also claims that other defendants conducting the cell extractions used excessive force. On January 23, 2018, defendants Esser, Bearce, Broadbent, Mutiva, Goddfrey conducted a cell extraction at Security Director Kartman's direction, for the purpose of transporting him for a tube feeding. Staten also asserts related claims against defendants Edge, Drone and Jaynes for refusing to treat Staten's injuries after the cell extraction and force feeding him in a painful manner. Staten also alleges that on February 3, 2018, Kartman directed Soloman, Engleburger, Collins, Peckham and Gallenger to conduct a cell extraction to transport him for a tube feeding, using excessive force in the process.

**Lawsuit #2**: Staten was unable to adequately access materials necessary to prepare a written complaint because of restrictions imposed by defendant Brown and psychological unit staff.

**Lawsuit #3**: In 2017, defendants Hoem and Rubin-Asch referred Staten to the Wisconsin Resource Center ("WRC") based on his mental health needs (severe depression and schizophrenia), but then cancelled the referral to retaliate against Staten for starting a hunger strike.

**Lawsuit #4**: On March 26, 2019, Kartman imposed a no container restriction to

3

stop him from drinking fluids with his medications. In April 2019, Staten engaged in self-harm and Jones, Hoepper, Hoem and Kartman failed to respond or provide him medical attention. On June 12, 2019, Kartman instructed staff to use excessive force to take blood and urine from Staten. Staten claims that Fischer and Adams were involved, injuring him during the course of the procedures.

These lawsuits involve unrelated claims and groups of defendants. To the extent some of the lawsuits are related because of plaintiff's common allegation that Kartman directed the conduct of other defendants, litigating all of these lawsuits together would prove unwieldy and unmanageable. As such, the court will direct plaintiff to respond to this order explaining how he wishes to proceed on his claims. Plaintiff may proceed on only *one* of the identified lawsuits under this case number. If he wishes to pursue any of the other lawsuits identified above, he must do so by filing a separate complaint related to those lawsuit or lawsuits, each of which will be assigned a new and distinct case number. Plaintiff will be required to pay a separate filing fee for any additional lawsuit or lawsuits on which he chooses to proceed.

Since it is not clear at this time which of his lawsuits plaintiff will pursue, he should be aware that the court has not reached any opinion about the merits of any claims raised in the lawsuits outlined above. Once plaintiff identifies the suit he wants to litigate under this case number, the court will screen it as required by §§ 1915(e)(2), 1915A. If plaintiff disagrees with the way the court grouped his claims, or if he believes the court has left out claims he intended to assert, he may also raise those objections in his response, provided that he still complies with this order and chooses a single lawsuit to pursue. If he fails to do this, the court will have no choice but to dismiss all of his claims for failure to prosecute this case.

## II. Plaintiff's Motions

### A. Motion for Assistance in Recruiting Counsel (dkt. #15)

Also before the court is Staten's motion for assistance in recruiting counsel, which the court is denying at this time. Before this court considers recruiting counsel for a *pro se* litigant, the court must find that the plaintiff is indigent, he has made reasonable efforts to recruit an attorney on his own, and that those efforts have failed. *Jackson v. Cty. of McLean*, 599 F.3d 749, 760-61 (7th Cir. 2010). A party may satisfy that requirement with evidence that at least three lawyers refused his request to represent him. While Staten claims he wrote letters to three attorneys who declined to represent him, it is not apparent from the record of this lawsuit that the legal and factual complexity of this lawsuit exceeds his s abilities. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). At this stage, Staten's only obligation is to choose which lawsuit he wishes to pursue under this case number, and a review of his filings thus far suggest that he is capable of completing this task. While the court is denying his request for recruitment of counsel at this time, the denial will be without prejudice to his ability to renew his request should he be granted leave to proceed and he can explain in detail how the legal and factual difficulties of this case exceed his abilities.

### B. Motion for Preservation of Video Footage (dkt. #14)

Staten seeks to preserve video footage of events that took place on April 10, June 5, June 6, and June 12 of 2019. To the extent video footage of events that took place between Staten and defendants exists, it may be relevant to Staten's claims. While it is not clear

whether Staten will be pursuing claims related to incidents from those dates, "preservation letters" are common in civil litigation before a complaint is even filed. Since the burden on defendants to preserve such footage would be minimal, the motion is granted.

### C. Motions for Preliminary Injunction (dkt. ##21, 23, 26)

Staten filed multiple motions for a preliminary injunction, claiming that various defendants (all WSPF employees) have been abusing him in numerous ways because he filed this lawsuit. However, these motions do not comply with this court's procedures for obtaining preliminary injunctive relief, a copy of which will be provided to Staten with this order. Under these procedures, a plaintiff must file and serve proposed findings of fact that support his claims, along with any evidence that supports those proposed findings. Staten has neither submitted proposed findings of fact nor cited any evidence to support those findings.

Even if Staten's motions were not procedurally flawed, they would be denied on the merits at this time. To prevail on a motion for a preliminary injunction, plaintiff must show: (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted. *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007). Staten was transferred to Columbia, and he has not suggested that any of the defendants work at Columbia or have taken any action against him since his transfer. Accordingly, his requests for injunctive relief are moot.

### D. Motion for Default Judgment (dkt. #29)

Finally, Staten asks that the court enter default judgment against defendants.

However, no defendants have been served, and default has not been entered against any of them. As such, it follows that Staten is not entitled to default judgment against defendants. *See* Fed. R. Civ. P. 55 (default must be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend"). The motion is denied.

ORDER

IT IS ORDERED that:

1. Plaintiff Deshaun Staten's motion to amend (dkt. #12) is GRANTED.

2. Plaintiff has until **March 17, 2020,** to identify for the court which one of the lawsuits identified in this opinion he wishes to pursue under the case number assigned to his complaint.

3. No later than **March 17, 2020,** plaintiff must also inform the court whether he wishes to continue to prosecute his other claims as a separate lawsuit or withdraw it voluntarily. If plaintiff dismisses those other claims voluntarily, he will owe no further filing fee. If plaintiff advises the court he intends to prosecute his other lawsuit separately, he will (1) owe a separate $350 filing fee for each new lawsuit and (2) need to file a separate complaint setting forth his claims in that lawsuit.

4. If plaintiff fails to respond to this order by **March 24, 2020,** then the clerk is directed to enter an order dismissing without prejudice the entire lawsuit based on plaintiff's failure to prosecute it.

5. Plaintiff's motions for screening of complaint (dkt. ##11, 27) are DENIED as moot.

6. Plaintiff's motion for assistance in recruiting counsel (dkt. #15) is DENIED without prejudice.

7. Plaintiff's motions for preliminary injunctive relief (dkt. ##21, 23, 26) are DENIED. The clerk of court is directed to send plaintiff a copy of this court's procedures for filing motions for injunctive relief.

8. Plaintiff's motion for preservation of video footage (dkt. #14) is GRANTED.

The clerk of court is directed to serve this order on the Wisconsin Attorney General's Office so that it can direct defendants to preserve the video footage related to the incidents that took place on April 10, June 5, June 6 and June 12 of 2019.

9. Plaintiff's motion for default judgment (dkt. #29) is DENIED.

Entered this 25th day of February, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge