IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DESHAUN STATEN,

                Plaintiff,                            OPINION AND ORDER

v.                                                            19-cv-512-wmc

JOLINDA WATERMAN,

                Defendant.

*Pro se* plaintiff Deshaun Staten is incarcerated at the Wisconsin Secure Program Facility ("WSPF"). The court granted Staten leave to proceed in this lawsuit against Jolinda Waterman, a Health Services Manager ("HSM") at WSPF, under the Eighth Amendment and state law.[1] Specifically, Staten contends that on February 27, 2018, Waterman conducted a blood draw improperly, causing blood loss and pain, then refused to provide him medical attention for his injuries. Now before the court is Waterman's motion for summary judgment. (Dkt. #90.) Having submitted audio and video footage with her motion that shows the entirety of the blood draw **and** directly refutes Staten's principal assertions of injury and denial of needed medical attention, Waterman has demonstrated her entitlement to summary judgment.

---

[1] Defendant states that the court relinquished jurisdiction over Staten's state-law claim against Waterman, but the court explicitly retained jurisdiction over that claim in its opinion and order resolving defendants' affirmative defense of exhaustion. (*See* dkt. #88, at 8.)

UNDISPUTED FACTS[2]

In February 2018, Staten was on a hunger strike, so WSPF health care staff obtained a court order permitting institution staff to conduct routine assessments and weight checks and involuntary feeding and hydration. On February 27, 2018, Staten was brought to the health services unit ("HSU") for a medical assessment, which involved a blood draw and urinalysis. Staten was brought to the HSU in a restraint chair.

Staten alleged in his amended complaint that when Waterman conducted the blood draw, she improperly removed the needle from his arm, which caused him to bleed so much that blood soaked through his sweatshirt. Staten also contends that Waterman refused to treat the bleeding, even though she admitted that she "messed up" during the blood draw. Staten claims that although his arm was swollen and bruised around the injury, his request for treatment was again denied.

The video footage of this blood draw (*see* Ex. 1001, at 5:10-21:00), refutes those allegations. That footage shows that Staten was escorted to the HSU in a restraint chair by four officers, at which point a nurse asked Staten if he wanted something to eat or drink, and he declined. The nurse took his vitals and asked Staten if he would complete a urine sample, and he declined. HSM Waterman entered the room to draw Staten's blood. Staten verbally resisted getting his blood drawn because his hands were behind his back, so the restraints were redone to move his arms in front of his body. (*Id.* at 11:54-15:28.)

Then Waterman conducted the blood draw. The video footage further shows

---
[2] Unless otherwise indicated, the following facts are materials and undisputed, drawn from defendants' proposed findings of fact and Staten's amended complaint.

Waterman conducting the blood draw without incident. (*Id.* at 15:30-17:50.) Staten did not complain about pain at any point, including when Waterman removed the needle, and neither his body language nor his facial expressions suggest any discomfort. After it was complete, Waterman noticed blood at the puncture point, so she applied pressure, checked the bandage to ensure it was secure and told Staten that he might bruise. (*Id.* at 17:35-18:30.) About two minutes later Waterman noticed that a drop of blood leaked onto Staten's pants, so she wiped it off his pants. (*Id.* at 20:46-20:54.) Staten did not complain about the blood draw, and the footage does not show that his shirt had any blood on it.

Afterwards, Staten was examined by a nurse practitioner, taken to the bathroom for a urine sample and returned to his cell. That afternoon, Staten returned to the HSU for involuntary hydration. He did not mention an issue with the blood draw. Staten was seen again the next morning in the HSU, and staff did not note that Staten raised a concern about the blood draw from the day before. The HSU has no record that Staten subsequently complained about the blood draw, either verbally or by submitting a health service request form.

There is no indication from the video footage that anyone, including Staten, was concerned about the amount of blood that came from the puncture point, nor does the footage show that Staten continued to bleed after Waterman applied pressure and adjusted the bandage. Further, the audio from the footage does not capture Waterman stating that she messed up or refusing to provide Staten any additional medical treatment.

3

OPINION

A party is entitled to summary judgment if the movant shows that there is no genuine dispute as to any material fact, and judgment is appropriate as a matter of law. Federal Rule of Civil Procedure 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. If the moving party makes a showing that the undisputed evidence establishes their entitlement to judgment beyond reasonable dispute, then to survive summary judgment, the non-moving party must provide contrary evidence "on which the jury could reasonably find for the nonmoving party." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252). Moreover, in cases where, as here, video evidence is available: "to the extent [plaintiff's] story is 'blatantly contradicted' by the video such that no reasonable jury could believe it, we do not credit his version of events." *Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

To prove his Eighth Amendment claim against Waterman, Staten must show that: (1) he had a serious medical need; (2) defendants knew the plaintiff needed medical treatment; and (3) defendants consciously failed to take reasonable measures to provide the necessary treatment. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). "Serious medical needs" include: (1) life-threatening conditions or those carrying a risk of permanent serious impairment if left untreated; (2) withholding of medical care that results in needless pain and suffering; or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

4

"Deliberate indifference" encompasses two elements: (1) awareness on the part of officials that the prisoner needs medical treatment; and (2) disregard of this risk by conscious failure to take reasonable measures."  Finally, to prove that Waterman was negligent under Wisconsin law, Staten must show: (1) Waterman owed him a duty of care; (2) a breach of the duty by failing to exercise ordinary care; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.  *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 307 (1987).

    As summarized above, the video footage does not support a finding by a reasonable trier of fact that Waterman either consciously disregarded a serious medical condition or breached a duty of care to Staten.  Moreover, in opposition, Staten does not suggest that the video footage did not capture all material events from the blood draw.  Instead, he asks that the court allow this case to proceed to a jury trial, and for leniency because of his mental health challenges.  Staten submits his own declaration and the declaration of another inmate, who each elaborate on the severity of Staten's mental health challenges, but not on his blood draw injuries or defendant's breach of any medical duty, much less claimed deliberate indifference to a serious medical need.  (*See* dkt. ##100, 101.)

    While the court sympathizes with Staten, it also sympathizes with the challenges faced by HSM Waterman and others working under difficult conditions to provide health care to inmates.  Regardless, under the circumstances presented here, the evidence does not merit a jury trial.  The jury's only role in this case would be to resolve factual disputes about what Waterman did or did not do during and shortly after the blood draw.  Since Staten has offered no evidence that the video footage is inaccurate or shows he was

bleeding, nor that it would have been apparent to Waterman that Staten was in pain or needed follow up medical treatment, no reasonable factfinder could conclude that Waterman violated Staten's constitutional rights. Although the court would ordinarily decline to exercise supplemental jurisdiction and address the merits of Staten's state law claim, an exception exists where, as here, that claim is also meritless on its face. *See Korsen v. Local Union 705*, 75 F.3d 285, 288-89 (7th Cir. 1996). Accordingly, Waterman is entitled to judgment in her favor on that claim as well for the same reasons.

## ORDER

IT IS ORDERED that:

1) Defendant Jolinda Waterman's motion for summary judgment (dkt. #90) is GRANTED.

2) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 29th day of November, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge